# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  '23 MJ3698
  White iPhone Cell Phone )
Seized as FP&F No. 2023250100051901-0001 )
(Target Device) )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, 846 | Distribution of Controlled Substances, Unlawful Use of Communication Facility, Conspiracy |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steven R. Merklein, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   10/11/2023

*Judge's signature*

City and state:  San Diego, California        Hon. Michelle M. Pettit, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Steven R. Merklein, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device (**Target Device**):

> White iPhone Cell Phone
> Seized as FP&F No. 2023250100051901-0001
> **(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 21, United States Code, Sections 841, 843, and 846, as further described in Attachment B.

2. The requested warrant is related to the investigation and prosecution of Leobardo VEGA for violations of Title 21, United States Code, Sections 841, 843, and 846. The **Target Device** is currently in the custody of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I am a special agent employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since November of 2018, and am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7). I am currently assigned to DSAC San Ysidro on the Fentanyl Abatement & Suppression Team (FAST). Before joining FAST, I was assigned to Contraband Smuggling Group

1

Three. Before joining HSI, I was employed as an agent with the United States Border Patrol. While employed as a Border Patrol agent I served as a Task Force Officer (TFO) on a DEA narcotics task force and worked on both sector- and station-level intelligence and abatement teams.

5. During my employment as an HSI special agent and in my positions as a Border Patrol agent and DEA TFO, I've conducted criminal investigations for numerous violations of federal and state laws including, but not limited to alien smuggling, narcotics smuggling, and organized criminal activity. I have conducted or assisted in more than 300 investigations involving controlled substances. I have participated in several controlled purchases of narcotics with the use of confidential informants (CIs) and have personally conducted hand-to-hand drug transactions while operating in an undercover capacity. I have participated in the execution of narcotic-related arrests and search warrants for violations involving controlled substances, including fentanyl, heroin, methamphetamine, cocaine, ecstasy, LSD, marijuana, and pharmaceuticals. Through these investigations, I have gained extensive knowledge from users of narcotics, sellers of narcotics, CIs and veteran narcotics detectives regarding the manner in which narcotics are sold, distributed, transported, stored, concealed and ingested. I am aware that it is common practice for narcotics traffickers to work in concert using cell phones. I am aware that narcotics traffickers frequently communicate with individuals responsible for importing concealed narcotics into the United States as well as with those distributing narcotics within the United States. For example, prior to the distribution of narcotics, narcotics traffickers frequently communicate with the transporters regarding arrangements and preparation for the narcotics distribution. When the distribution is underway, narcotics traffickers frequently communicate with the transporters to remotely monitor the progress of the narcotics, provide instructions, and warn accomplices about law enforcement activity.

6. In addition to my experience, I have received multiple formal trainings related to conducting narcotics investigations. These courses focused primarily on the identification of controlled substances, case management and development, managing CIs,

tactical street operations, undercover operations, surveillance operations, highway interdiction, hidden compartments, and various methods of drug trafficking. In addition to these courses, I was previously certified by the California Attorney General to conduct wiretaps as authorized in California Penal Code Section 629.50, et seq.

7. I have conferred with other agents and law enforcement personnel who are also experienced in narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. I have included in parentheses or in brackets my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation.

8. Based upon my training, experience as a special agent, and consultation with law enforcement officers experienced in narcotics trafficking organizations, I am aware that:

   a. Drug traffickers use digital devices such as cell phones, tablets, and laptop computers because they are mobile and they have instant access to telephone calls, text, web, email and voice messages tending to indicate efforts to import and distribute controlled substances within the United States and between the United States and Mexico;

   b. Drug traffickers use digital devices such as cell phones, tablets, and laptop computers because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug traffickers and their accomplices use digital devices like cell phones, tablets, and laptop computers because they can easily arrange or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug traffickers use digital devices such as cell phones, tablets, and laptop computers to direct drivers to synchronize an exact drop-off or pick-up time of their illegal cargo;

   e. Drug traffickers use digital devices such as cell phones, tablets, and laptop computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings;

3

 f. The use of digital devices such as cell phones, tablets and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data;

 g. Individuals involved in drug trafficking often use digital devices such as cell phones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, firearms, drugs, criminal proceeds, and assets purchased with criminal proceeds; and

 h. Individuals involved in drug trafficking may use digital devices such as cell phones, tablets, and laptop computers to generate or save documents to track proceeds or inventory related to the movement of narcotics or drug proceeds and may visit websites to research or support false background stories in an attempt to create a front of a legitimate operation.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cell phones (including their SIM cards) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cell phone. Specifically, searches of cell phones of individuals involved in the importation of narcotics may yield evidence:

 a. tending to indicate efforts to distribute controlled substances within the United States;

 b. tending to identify accounts, facilities, storage devices, or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of controlled substances within the United States;

 c. tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances within the United States;

4

    d. tending to identify travel to or presence at locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the device; and

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in narcotics-trafficking activities.

## FACTS SUPPORTING PROBABLE CAUSE

10. On April 10, 2023, Eugene Andrew FOSTER was arrested for the state offense of possession of fentanyl. During a post-arrest interview, FOSTER told HSI special agents that he received the fentanyl he had on the day of his arrest from someone he knew as "Junior." FOSTER described Junior as a Hispanic male possibly in his 20s or 30s that might drive a Jeep Cherokee. State charges were dropped against FOSTER and federal charges for possession of fentanyl with intent to distribute were filed. FOSTER was re-arrested on April 18, 2023, and taken into federal custody.

11. FOSTER was in possession of two cell phones during his first arrest. He provided consent for HSI agents to conduct searches of those devices. FOSTER possessed three more cell phones during his second arrest. A federal search warrant was submitted and approved to conduct searches on the additional three devices. During a review of FOSTER's phones, HSI agents found contact "Ct Jr" with the number (619) 967-7435. Agents identified that number as belonging to Leobardo VEGA. Subscriber information indicated that VEGA started use that phone number on March 3, 2023. On April 9, 2023, the day before FOSTER's arrest, there is a text exchange between FOSTER and VEGA:

- 4/9/23 3:39 p.m. - Outgoing call to VEGA from FOSTER
- 4/9/23 3:40 p.m. - From FOSTER: "Need that sample pack fam"
- 4/9/23 6:36 p.m. - From VEGA: "Ok fam" "Link up like at 9 pm" "Cool"
- 4/9/23 7:14 p.m. - From VEGA: "Fam"

5

12. VEGA's phone number was also in two of FOSTER's cellular devices seized during the second arrest on April 18, 2023, with multiple calls and chat strings that took place in the eight days between FOSTER's arrests, including the following chat string on one of his devices:

- 4/14/23 1:40 p.m. – From FOSTER: "Yo fam"
- 4/14/23 7:05 p.m. – From VEGA: "Call me back when you have some time."
- 4/16/23 3:15 p.m. – From VEGA: "Yoo"
- 4/16/23 3:44 p.m. – From FOSTER: "Yooo"
- 4/16/23 3:44 p.m. – From VEGA: "Yooo"
- 4/16/23 3:45 p.m. – From VEGA: "We need to talk asap"

13. HSI Special Agent Merklein reviewed FOSTER's jail communications from the Western Regional Detention Facility that took place from April 18, 2023, to July 25, 2023. Throughout various jail calls FOSTER discusses drug sales and money collections, as well as mentions VEGA, whom he also refers to as "L Street." On a call on May 10, 2023, between FOSTER and his son Diamond, FOSTER asks Diamond to ask "L Street" if "the tennis shoes, the air force ones, are still 13-5." On May 29, 2023, FOSTER spoke directly to VEGA through a phone call with another associate "KAPO" (identified as Ricardo Colone-Dominguez Jr.). In this conversation VEGA asks FOSTER if he can take over the payments on FOSTER's "truck" to use for the deal. Based on my training and experience I believe the above contact and conversations to be indicative of setting up a narcotic distribution deal.

14. On July 7, 2023, HSI special agents debriefed FOSTER about the events leading up to his initial arrest. FOSTER was shown a photo lineup in which he identified VEGA as being the person that provided FOSTER with the fentanyl he had on him when he was arrested on April 10, 2023.

15. On August 18, 2023, at about 5:15 p.m., DEA Narcotics Task Force 5 arrested Leobardo VEGA at a residence in Bonita, California, without incident. VEGA was arrested per an active extraditable FBI arrest warrant from South Dakota for possession of a

controlled substance with intent to distribute, stemming from a 2022 arrest in which VEGA was transporting methamphetamine. Present during the arrest was HSI Special Agent Steven R. Merklein.

16. At the time of VEGA's arrest, a DEA agent found a white iPhone in a clear protective case in a pocket in VEGA's shorts. Agents seized the cellphone incident to arrest. Special Agent Merklein placed a phone call from his agency issued cellular device to VEGA's phone number, (619) 967-7435. The iPhone seized by agents from VEGA rang and Special Agent Merklein's phone number flashed across the phone's screen. Special Agent Merklein placed VEGA's phone in airplane mode, connected it to a phone charger, and placed it in a Faraday bag.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics-trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, email addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on July 18, 2023, through August 18, 2023 (the 30 days leading up to VEGA's arrest).

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cell phone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cell phones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books and can be

minicomputers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cell phones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cell phone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cell phone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

# CONCLUSION

22. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of violations of Title 21, United States Code, Sections 841, 843, and 846.

23. Because the **Target Device** was seized at the time of VEGA's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from July 18, 2023, to August 18, 2023.

24. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Steven R. Merklein
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of October 2023.

_____
The Honorable Michelle M. Pettit
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> White iPhone Cell Phone
> Seized as FP&F No. 2023250100051901-0001
> (**Target Device**)

**Target Device** is currently in the possession of the Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cell phone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cell phone for evidence described below. The seizure and search of the cell phone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cell phone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **July 18, 2023, to August 18, 2023**:

a. tending to indicate efforts to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the distribution of controlled substances, such as stash houses, load houses, or points of delivery or distribution within the United States;

e. tending to indicate payment for the distribution of controlled substances within the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 841, 843, and 846.